IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **GLEN DALE YADON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No. 11-4164-RDR** |
| ) | |
| **CHRIS HILTON, JASON BACON,** ) | |
| and **SHAWN WANGERIN,** ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This is a <u>pro se</u> action pursuant to 42 U.S.C. § 1983 alleging that defendants, three police officers, violated plaintiff's constitutional right against unreasonable seizure by employing excessive force during an arrest for disorderly conduct. This case is before the court upon defendants' motion for summary judgment. Doc. No. 52. Plaintiff has also filed motions for discovery. Doc. Nos. 63 and 64. As explained below, the court finds that plaintiff cannot prove that defendants violated clearly established constitutional rights and, therefore, the motion for summary judgment must be sustained. In addition, although plaintiff has not responded to defendants' argument that plaintiff has failed to properly serve defendants with legal process, the court shall not decide that argument. Finally, plaintiff's motions for discovery shall be denied as immaterial and untimely.

I.  <u>Standards for pro se pleadings</u>

"A <u>pro se</u> litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Tenth Circuit has "repeatedly insisted that <u>pro se</u> parties follow the same rules of procedure that govern other litigants." <u>Garrett v. Selby Connor Maddux & Janer</u>, 425 F.3d 836, 840 (10th Cir. 2005)(quotation omitted). In this regard, the court notes that the Local Rules of this court for motions for summary judgment require that:

> **(b) Opposing Memorandum**
> (1) A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, state the number of movant's fact that is disputed.
>
> (2) If the party opposing summary judgment relies on any facts not contained in movant's memorandum, that party must set forth each additional fact in a separately numbered paragraph, supported by references to the record, in the manner required by subsection (a), above. All material facts set forth in this statement of the non-moving party will be deemed admitted for the purpose of summary judgment unless specifically controverted by the reply of the moving party.
> . . . .
> **(d) Presentation of Factual Material**
> All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of

>     pleadings, depositions, answers to interrogatories,
>     and responses to requests for admissions. Affidavits
>     or declarations must be made on personal knowledge and
>     by a person competent to testify to the facts stated
>     that are admissible in evidence. Where facts referred
>     to in an affidavit or declaration are contained in
>     another document, such as a deposition, interrogatory
>     answer, or admission, a copy of the relevant excerpt
>     from the document must be attached.

Local Rule 56.1(b). Plaintiff has not submitted an opposing memorandum or presented factual material in compliance with this Local Rule. Nevertheless, the court has examined and analyzed the pleadings and materials plaintiff has submitted and attempted to give them a fair construction.

## II.  Summary judgment standards

Summary judgment is warranted if the materials on record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.CIV.P. 56(a). The court views "all of the facts in the light most favorable to the non-movant and reasonable inferences from the record must be drawn in favor of the non-moving party." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007). From this viewpoint, the court attempts to determine whether a reasonable jury could return a verdict in favor of the non-moving party. Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004). "While we view the record in the light most favorable to the non-moving party, that party must still identify sufficient evidence requiring submission to the jury to

survive summary judgment." Piercy, 480 F.3d at 1197. In other words, the court may consider evidence produced by the moving party as well as the absence of admissible evidence in favor of an essential element of the non-moving party's claim. Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

III. Uncontroverted facts

The following factual recitation is taken mostly from a list of facts contained in defendants' motion.  Plaintiff has either not responded in opposition to these facts or has failed to oppose the facts with citation to any competent authority to support his opposition.

Each defendant is a police officer for the City of Council Grove, Kansas.  On May 8, 2010, defendants responded to a non-injury accident at 123 North 10th Street in or near Council Grove.  The accident involved a person who backed her vehicle into another vehicle parked illegally at that location.  The officers found that three vehicles were parked facing the wrong direction and requested that the owners of the vehicles move their vehicles to be legally parked.  Plaintiff was one of the vehicle owners.  While defendants were working the accident and asking for the vehicles to be moved, plaintiff several times yelled and flailed his arms in the vicinity of defendants. Plaintiff was apparently disturbed because he thought the accident was in the jurisdiction of Morris County, Kansas

4

authorities and not in the jurisdiction of the Council Grove police department. The last time plaintiff acted in a disruptive fashion, defendant Wangerin told plaintiff he was under arrest for disorderly conduct and directed plaintiff to put his hands behind his back. Plaintiff turned away from defendants and hurried to his van. Defendant Wangerin yelled at plaintiff to stop, but plaintiff tried to get into his van. Defendant Wangerin then grabbed plaintiff's arm (or neck, according to plaintiff) and tried to pull him away from the van. Plaintiff yelled loudly and swung his arms around. He struggled for several minutes before being handcuffed. During this time, defendant Bacon put his elbow underneath plaintiff's right shoulder and the two of them went to the ground. Defendants Wangerin and Bacon attempted to hold plaintiff on the ground while defendant Hilton tried to handcuff plaintiff. Plaintiff pulled his arm away several times before he was finally handcuffed. During this process, plaintiff continued to struggle and then began to complain that he could not breathe.

Plaintiff was arrested for disorderly conduct and ultimately entered a diversion agreement to resolve charges of disorderly conduct and obstructing legal duty. In May 2010, disorderly conduct was a class C misdemeanor in Kansas and obstructing legal duty was a class A misdemeanor. K.S.A. 21-4101, K.S.A. 21-3808 (2007)(repealed and replaced on July 1,

2011). As part of the diversion agreement, plaintiff agreed that if the diversion agreement was revoked by the court, he would admit to the contents of the State's complaint and accompanying reports, and that the trial could proceed to the court upon those stipulated facts.

Plaintiff was examined by a doctor not long after plaintiff's arrest. The doctor found contusions and abrasions on plaintiff's face and arms, and a sprained right elbow. Pictures submitted as part of the record show a substantially swollen elbow and the abrasions noted by the doctor. Two days after the incident, plaintiff had his ribs x-rayed. The x-rays showed two nondisplaced rib fractures. Plaintiff is 6'1" or 6'2" and weighed 194 pounds on May 8, 2010.

Plaintiff testified in a deposition that he was grabbed by the neck and "choked out." Doc. No. 53-2, pp. 39-40 of deposition. He has little recollection after that, although he remembers gasping for air twice and awaking handcuffed, with defendant Hilton on his back. Id. at pp. 40-41 of deposition. He has no recollection of being hit. Id. at p. 52 of deposition.

IV. <u>Defendants are entitled to qualified immunity from liability</u>.

Qualified immunity protects public officials performing discretionary functions unless their conduct violates "clearly

6

established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity leaves "ample room for mistaken judgments," protecting "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 & 343 (1986). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). The question is not whether the right against excessive force in general is clearly established, but whether under the facts of the case plaintiff's rights against excessive force were clearly violated. Morris v. Noe, 672 F.3d 1185, 1196 (10th Cir. 2012).

Upon a summary judgment motion, when a qualified immunity defense has been raised, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right and the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue and under the circumstances in question. See Koch v. City of Del City, 660 F.3d 1228, 1238 (10th Cir. 2011) cert. denied, 133 S.Ct. 211 (2012). If plaintiff makes this showing then the burden shifts back to the defendant to demonstrate that there are no genuine issues of

material fact and that he or she is entitled to judgment as a matter of law.  Id.  "A qualified immunity defense will not succeed [upon summary judgment] . . . when the facts considered collectively present an incomplete picture of the relevant circumstances."  Olsen v. Layton Hills Mall, 312 F.3d 1304, 1314 (10th Cir. 2002)(interior quotation omitted).

Excessive force is determined under an "objective reasonableness" standard from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  Graham v. Connor, 490 U.S. 386, 396 (1989); Cordova v. Aragon, 569 F.3d 1183, 1188 (10th Cir. 2009) cert. denied, 130 S.Ct. 1146 (2010).  "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Graham, 490 U.S. at 396.  The totality of circumstances is examined including the following factors taken from the Graham case:  "'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  Weigel v. Broad, 544 F.3d 1143, 1151-52 (10th Cir. 2008)(quoting Graham, 490 U.S. at 396)).  Measuring the reasonableness of force is generally a fact issue for the jury.  Buck v. City of Albuquerque, 549 F.3d 1269, 1288 (10th Cir. 2008).  But, "'the mere fact that an injury

8

occurred while an individual was in police custody is not sufficient to avoid summary judgment – a plaintiff must identify the specific unreasonable conduct that caused his or her injuries.'" Giannetti v. City of Stillwater, 216 Fed.Appx. 756, 766 (10th Cir. 2007)(quoting Abdullahi v. City of Madison, 423 F.3d 763, 770-71 (7th Cir. 2005)).

Examining the Graham factors here, it appears that plaintiff was being arrested for a class C misdemeanor, not a serious crime.  Second, there is no evidence that plaintiff posed an immediate threat to the safety of defendants (who outnumbered plaintiff) or others, except to the extent that he was angry and flailed his arms.  Finally, plaintiff did actively resist arrest.  So, the first Graham factor only slightly justifies the use of force.  The second Graham factor only modestly supports the use of force.  And, the third Graham factor strongly supports the use of force.  Where all three factors support some use of force and the use of force in this case (which plaintiff either cannot or has not described in any detail) is not clearly egregious, the court is inclined to find that defendants' conduct did not violate clearly established constitutional principles.

This conclusion is supported by the results in several other cases.  First, with regard to forcibly removing plaintiff from his van, the court has examined the following cases:

Huntley v. City of Owasso, 2012 WL 4458342 *4 (10th Cir. 9/27/2012)(arm bar maneuver used to remove a compliant domestic violence suspect from house); Lawrence v. Bloomfield Township, 2008 WL 647163 *4-5 (6th Cir. 3/7/2008)(grabbing hair and dragging belligerent domestic violence suspect out of his home); Meacham v. Frazier, 500 F.3d 1200, 1204-05 (10th Cir. 2007)(pepper spray employed against woman stopped for speeding and failing to wear a seat belt when she refused to cooperate with officers and to exit the car over a 50-minute period of time); Lawrence v. Kenosha County, 391 F.3d 837, 843 (7th Cir. 2004)(attempting to pull driver out of vehicle by the arm when he angrily refused to produce driver's license); Anderson v. Antal, 1999 WL 717993 *4 (6th Cir. 9/7/1999)(grabbing arm and forcibly removing female driver from car who had been stopped for running a red light and had twice refused to get out of car); Ashbrook v. Boudinot, 2007 WL 4270658 *4-5 (S.D.Ohio 12/3/2007)(dragging DUI suspect out of car who had refused to exit and had been slow to stop in response to sirens and lights); Swanson v. Fields, 814 F.Supp. 1007, 1017 (D.Kan. 1993) aff'd, 1993 WL 537708 (10th Cir. 12/30/1993)(grabbing neck of belligerent arrestee in order to handcuff and arrest him).

Second, with regard to forcibly taking plaintiff to the ground, the court has examined the following cases: Huntley, at *5 (leg sweep justified by suspect's resistance); Bozung v.

Rawson, 2011 WL 4634215 *7 (6th Cir. 10/7/2011)(arm bar takedown of intoxicated person suspected of a misdemeanor who did not follow order to put his hands behind his back); Liiv v. City of Coeur D'Alene, 130 Fed.Appx. 848, 852 (9th Cir. 4/20/2005)(throwing down video journalist for crossing barrier tape in violation of city ordinance at Aryan Nations' march); Hinton v. City of Elwood, 997 F.2d 774, 781 (10th Cir. 1993)(taking a person stopped for disturbing the peace to ground after he shoved an officer – using stun gun on the person when his resistance to arrest and handcuffing increased); Raymond v. Dine, 2012 WL 4813520 *4 (D.Md. 10/9/12)(leg sweep of person, arrested for disorderly conduct and littering, which caused hairline fracture of jaw); Mitchell v. City of Morristown, 2012 WL 2501102 *5-7 (E.D.Tenn. 6/28/2012)(multiple officers taking down a noncompliant person arrested for disorderly conduct); Hill v. Mueller, 2009 WL 613578 *4-6 (E.D.Mich. 3/6/2009)(suspected bank robber who, once cornered, approaches police with hands up and is taken to the ground in a manner which breaks his ribs and vertebrae); Overton v. Hamilton County, 2009 WL 2601848 *3 (E.D. Tenn. 8/24/2009)(taking down pregnant student – and fracturing her finger – when she would not cooperate, was verbally abusive, and was going to be handcuffed and arrested for disorderly conduct); Sullivan v. City of Pembroke Pines, 2005 WL 6108998 *6-9 (S.D.Fla.

11

4/15/2005)(grabbing and twisting arm to take female down to the ground and placing a knee in her back when her non-violent belligerence caused officer to arrest her for disturbing the peace).

Finally, with regard to the allegations that the officers "choked out" plaintiff, the court has examined the following cases: Liiv, 130 Fed.Appx. at 852 (choke hold employed against person who refused to stand or cooperate after being arrested); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993)(5-second choke hold of person arrested for obstructing officer engaged in code enforcement); Tanner v. San Juan County Sheriff's Office, 864 F.Supp.2d 1090, 1153 (D.N.M. 2012)(reasonable to conclude that 3-second choke hold was necessary to prevent handcuffed suspect who was banging his head against vehicle from harming himself or others); Burns v. City of Redwood City, 737 F.Supp.2d 1047, 1063 (N.D.Cal. 2010)(use of "half-nelson" leading to torn brachial plexus against person who was resisting the efforts of two other officers to arrest him on suspicion of public intoxication).

In all of the cases listed above the courts determined that qualified immunity should be applied because the right against the use of force was not clearly established or the courts determined that the uses of force did not violate the constitutional right against excessive force.

12

The court acknowledges that plaintiff has filed two motions for discovery. One motion (Doc. No. 63) asks for photographs; the other motion (Doc. No. 64) asks for dispatcher tapes. Neither motion explains why this discovery would make a difference to the court's decision regarding the qualified immunity issues raised in defendants' summary judgment motion. In addition, the motions, which were filed on September 27, 2012, appear to be untimely because the pretrial order provides that all pretrial discovery was to be completed by May 31, 2012 with the exception of some discovery agreed to by the parties. Because the discovery motions appear to be immaterial to defendants' qualified immunity defense and untimely, the motions shall be denied.

Summing up, the court finds, giving plaintiff's pleadings a liberal construction, that plaintiff cannot describe and identify specific conduct by defendants which is clearly unreasonable under the totality of the circumstances and which constitutes excessive force pursuant to the analytical framework of the Graham decision and under results set out in roughly analogous cases. Therefore, defendants' qualified immunity defense is valid and summary judgment for defendants is warranted.

V. The court does not reach defendants' argument that personal jurisdiction has not been secured over defendants because the method of service was legally insufficient.

Service of process was done by the United States Marshal in this case. Defendants contend that service was insufficient because service was made upon them at their place of employment before any attempt was made to serve them at their homes. Plaintiff has not responded to defendants' argument.

There is conflicting authority within the District of Kansas over whether the method of service in this case is in substantial compliance with service of process requirements. This is discussed in one of the cases cited in defendants' motion for summary judgment. Nicks v. Brewer, 2010 WL 4868172 *5 (D.Kan. 11/23/2010). Rather than issue a decision on this point without the benefit of argument from both sides, the court shall defer reaching this point and resolve defendants' motion solely on the basis of the qualified immunity defense.

VI. Conclusion

In conclusion, consistent with the above-stated reasoning, defendants' motion for summary judgment (Doc. No. 52) shall be granted. Plaintiff's motions for discovery (Doc. Nos. 63 and 64) shall be denied.

**IT IS SO ORDERED.**

Dated this 14th day of January, 2013 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge